UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JOE MOORE,
    Plaintiff,

v.

CAROLE CHAPDELAINE, ET AL.,
    Defendants.

No. 3:15-cv-775 (VAB)

**RULING AND ORDER ON MOTION FOR SUMMARY JUDGMENT**

Joe Moore ("Mr. Moore" or "Plaintiff") filed this Complaint on May 21, 2015, alleging a violation of his civil rights under 42 U.S.C. § 1983 because of his sex treatment need score. Mr. Moore is currently incarcerated at the MacDougall-Walker Correctional Institution in Suffield, Connecticut, and proceeds *pro se*. Compl., ECF No. 1. The initial Complaint named only Warden Carole Chapdelaine as a defendant. Compl. at 1.

Following an amendment to the Complaint and other activity, including the dismissal of Chapdelaine and the addition and dismissal of other defendants, the remaining defendants have moved for summary judgment, arguing that Mr. Moore was not denied due process in connection with his classification, Defendants did not assign his sex offender classification score, Defendants are entitled to qualified immunity, and the claim is time-barred. Mot. Summ. J., ECF No. 43.

For the reasons that follow, Defendants' motion is **GRANTED**.

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Allegations

In January 1996, Mr. Moore pled guilty to a charge of selling illegal drugs and a risk of injury charge, related to an incident that occurred in 1993. Pl.'s Obj. to Mot. Summ. J., Moore Aff. ¶ 6, ECF No. 46-2. He served his sentence and, in 2003, was released on probation. *Id.* ¶ 7. In 2007, Mr. Moore served time again: he was "briefly incarcerated on a misdemeanor drug possession charge," and then released on probation. *Id.* ¶ 8. In July 2009, while on probation, Mr. Moore faced another criminal charge, for bank robbery. *Id.* ¶ 9. Sentenced on December 14, 2010, Mr. Moore is currently serving a thirty-four year sentence for robbery in the first degree based for that crime. Def.'s 56(A)(1) statement ¶ 1, ECF No. 43-2 (citing http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=10072).

While in prison, Mr. Moore received discipline for public indecency on August 29, 1991, for masturbating during a Narcotics Anonymous meeting in the presence of fifty inmates. *Id.* ¶ 25. On January 1, 1992, Mr. Moore pled guilty to a sexual misconduct disciplinary charge for masturbating in the presence of a correctional officer. *Id.* ¶ 26. On April 18, 1992, Mr. Moore pled guilty to a disciplinary report for public indecency for holding his penis and caressing himself. *Id.* ¶ 27. On May 8, 1992, Mr. Moore made sexual advances toward a female staff member, who refused his advances; he persisted, and she directed him to leave the room. *Id.* ¶ 28. On October 20, 1994, Mr. Moore pled guilty to a disciplinary report for public indecency for staring at a correctional officer and caressing his penis which was out of his pants and erect. *Id.* ¶ 29.

On December 1, 1997, Mr. Moore pled guilty to a disciplinary charge for public indecency when an officer witnesses him playing with his penis in full view. *Id.* ¶ 30. On

October 27, 1998, Mr. Moore pled guilty to a disciplinary charge for public indecency for exposing and fondling himself in front of a correctional officer whenever the officer approached his cell door during every scheduled and unscheduled tour of the housing unit the officer made over a two-week period. *Id.* ¶ 31. On May 3, 1999, Mr. Moore pled guilty to a disciplinary charge for public indecency for exposing himself to a correctional officer and masturbating. *Id.* ¶ 32. On April 17, 2007, Mr. Moore received discipline again, having been found guilty of assault for slapping a correctional officer on the buttocks as he walked by her. *Id.* ¶ 33.

Mr. Moore alleges that he participated in a "Track 1 Sex Offender Program," beginning on October 12, 2000, and ending on November 1, 2001, and that he has never been convicted for sexual assault. Am. Compl. ¶ 5. He also alleges that Counselor Wright required him to complete this program and told him that, if he did, he would be released on parole as a result, which he claims he was not. *Id.*

On August 30, 2011, Mr. Moore received an offender accountability plan. Def.'s 56(A)(1) statement ¶ 37. Defendant Weldon did not participate in writing the plan. *Id.* The staff member who created the plan, indicated "S1" on it, a referral to mental health to determine whether Mr. Moore should take the sex offender track 1 program. *Id.* ¶ 38.

Mr. Moore alleges that, on January 20, 2015, he met with Counselor Aubey, "the Counselor for L-pod at MacDougall-Walker Correctional Institution (at the time) to discuss an unrelated matter with him." Pl.'s 56(A)(1) statement ¶ 11. During the meeting, Mr. Moore claims that he noticed on his records a classification of "S1," which Counselor Aubey explained was a sex offender score. *Id.* ¶¶ 12-13. Mr. Moore alleges that Counselor Aubey was not a member of the mental health staff, and that the information on Counselor Aubey's computer was available to many members of the Department of Corrections staff. *Id.* ¶¶ 14-15.

Mr. Moore alleges that he sent "several letters to the Defendant Doctor Coleman seeking a copy of his mental health file." Am. Compl. ¶ 1. On February 10, 2015, Counselor Rosario responded that Mr. Moore should stop writing to Dr. Coleman, and that, if he wanted to obtain his mental health file, he should submit a request for a chart review. *Id.* On June 18, 2015, Dr. Coleman explained to Mr. Moore that his sex offender level was not a mental health classification issue, and directed him instead to Ms. Redden, the Director of the Sex Offender Program. *Id.* ¶ 4.

On June 23, 2015, Mr. Moore allegedly met with Defendants Redden and Dutkeiwicz to discuss the status of his sex treatment needs score. Pl.'s Obj. to Mot. Summ. J., Pl. Affidavit ¶ 18; Am. Compl. ¶ 2. Those Defendants allegedly explained to Mr. Moore that his "sister had been arrested on a prostitution charge," and that he had a "substantial number of masturbation tickets and said, 'You have a problem.'" Pl.'s Obj. to Mot. Summ. J., Pl. Affidavit ¶¶ 20-21. Mr. Moore allegedly told Mr. Redden that he had not received a ticket for masturbation in more than fifteen years, and "she stated, 'I don't care, I'm not changing your score.'" *Id.* ¶ 22. In Mr. Moore's case, he had been convicted for risk of injury to a minor, but the charges for sexual assault in the first degree and sexual assault in the fourth degree had been nolled. Def.'s 56(A)(1) statement ¶ 4. Prison officials removed the S1 designation from Mr. Moore's offender accountability plan on July 7, 2015, after verifying that Mr. Moore had completed the sex offender track 1 program. *Id.* ¶ 43.

**B.     Sex Treatment Need Scores**

All Connecticut inmates are assigned risk scores and needs scores. *Id.* ¶ 5. Risk scores encompass escape, the severity or violence of the current offense, history of violence, length of sentence, existence of pending charges or a detainer, disciplinary history, and security risk group

4

affiliation. *Id.* Needs scores are assigned for medical needs, mental health needs, educational needs, vocational or work skills, the need for substance abuse treatment, the need for sex treatment and the need for community resources. *Id.* Risk scores range from a low of "1" to a high of "5" for severity or violence of the current offense, history of violence, the presence of pending charges or detainers, and security risk group affiliation. *Id.* ¶ 6. All other risk scores range from a low of "1" to a high of "4." *Id.* Needs scores all range from a low of "1" to a high of "5." *Id.* ¶ 7. Each inmate is assigned an overall risk level that is determined by the inmate's highest risk score. *Id.* ¶ 8. The overall risk score determines the inmate's place of confinement. *Id.* ¶ 9. Needs scores, other than the sex treatment need score, do not affect the inmate's overall risk level. *Id.* ¶ 10. If an inmate is serving a sentence for a sex-related offense, he may not be classified below overall risk level "3" without the prior approval of the Commissioner or his designee. *Id.*

Mr. Moore has the following risk scores: escape "2," length of confinement "4," severity or violence of current offense "4," history of violence "1," presence of pending charges or a detainer "1," disciplinary history "1," and security risk group affiliation "1." *Id.* ¶ 11. His overall risk score therefore is "4." *Id.* Mr. Moore's needs scores are: medical "3," mental health "3," education "3," vocational or work skills "3," substance abuse treatment "4," sex treatment "3," and community resources "1." *Id.* ¶ 12.

Sex treatment need scores are assigned using the Department of Correction Classification Manual. *Id.* ¶ 13. A score of "1" indicates no current conviction, pending charges or identified history of sexual offenses. *Id.* ¶ 14. A score of "5" indicates a current conviction, pending charges or known history of sexual offenses involving physical contact with the victim and use of gratuitous and/or sadistic violence. *Id.*

5

Both conviction and non-conviction information can be used to determine the sex treatment need score. *Id.* ¶ 15. If a conviction is sexual in nature, an inmate receives a sex treatment score greater than "1" without a hearing. *Id.* If non-conviction information is used to assign the score, the inmate receives a hearing to determine the appropriate sex treatment need score. *Id.* Before June 1, 2011, the Department of Correction did not provide hearings to any inmate when determining his sex treatment need score. *Id.* ¶ 16.

Mr. Moore has had a sex treatment need score of "3" since October 12, 1995. *Id.* ¶ 19. Defendant Weldon was not employed by the Department of Correction in 1995 and did not assign Mr. Moore's sex treatment need score. *Id.* ¶ 20.

Sworn statements from an investigating officer and the victim depict the sexual nature of Mr. Moore's crime. *Id.* ¶ 21. Mr. Moore denies that the risk of injury charge was based on this conduct. Pl.'s Obj. to Mot. Summ. J. at 5-6. The classification manual mandates a sex treatment need score of "3" for inmates with "a current conviction, pending charge or known history of sexual offenses involving physical contact with the victim(s)." Def.'s 56(A)(1) statement ¶ 23. "An inmate who engages in predatory sexual behavior while incarcerated will be given a score of S-3." Defs.' Mem. Ex. 2, Attach. 1, ECF NO. 43-4 at 46-47.

Mr. Moore completed the sex offender track 1 program on November 1, 2001. Def.'s 56(A)(1) statement ¶ 34. Sex offender programming is offered to inmates who are approved by the mental health staff for the program. *Id.* ¶ 35. Completion of the program does not automatically reduce the inmate's sex treatment need score. *Id.* After completing the program in 2001, Mr. Moore's sex treatment need score remained "3." *Id.* ¶ 36.

Mr. Moore's sex treatment need score of "3" does not impact his overall risk level. *Id.* ¶ 45. His overall risk level is "4" because his risk factors for length of sentence and severity of

current sentence are both "4." *Id.* ¶ 46. Inmates may receive overall risk level reductions based upon the percentage of their sentence served since their last overall risk level change. *Id.* ¶ 47. There are factors, however, that could prevent an inmate from receiving an overall risk level reduction, such as refusing to participate in programming or disciplinary charges. *Id*. To be eligible for a "4" to "3" overall risk level reduction, an inmate must have completed 35 percent of his sentence since his last overall risk level change. *Id.* ¶ 48. To be eligible for a "3" to "2" overall risk level reduction, an inmate must have completed 30 percent of his sentence since his last overall risk level change. *Id.* ¶ 49. Mr. Moore's current projected date for a "4" to "3" overall risk level reduction is February 19, 2021. *Id.* ¶ 50. Assuming that occurs, his current projected date for a "3" to "2" overall risk level reduction is June 27, 2027. *Id.* ¶ 51.

Mr. Moore's sex treatment need score does not affect his place of confinement. *Id.* ¶ 53. Housing decisions are based on his overall risk level and his medical needs score. *Id.* ¶ 54. Nor does his sex treatment need score affect his location within a particular correctional facility. *Id.* ¶ 56. Barring special circumstances, such as protective custody or disciplinary segregation, inmates with sex treatment need scores greater than "1" are housed in general population. *Id*. Mr. Moore is eligible for prison jobs and has the same privileges as other inmates. *Id.* ¶ 58. Mr. Moore's sex treatment need score does not affect his ability to earn Risk Reduction Earned Credit or his eligibility for parole or residential program placement. *Id.* ¶¶ 59, 60.

### C. Procedural History

On May 21, 2015, Mr. Moore filed the initial Complaint in this Court. Compl. On May 27, 2015, the Court granted Mr. Moore's motion to proceed *in forma pauperis*. ECF No. 7. In an Initial Review Order filed July 17, 2015, the Court denied Mr. Moore's motion for appointment of counsel and dismissed all claims against Warden Chapdelaine. Initial Review Order at 7, ECF

No. 9. The Court also granted Mr. Moore leave to amend his Complaint to add as defendants several individuals whom he alleged were responsible for requiring him to complete a sex offender program. *Id.* at 6.

On August 3, 2015, Mr. Moore filed an Amended Complaint and named Dr. Coleman, Counselor Wright, Counselor Supervisor Wheldon, Eileen Redden, and Len Dutkeiwicz as Defendants. Am. Compl. Dr. Coleman and Ms. Redden were named in their individual and official capacities, and all other defendants are named only in their individual capacities. *Id.* The Court dismissed all claims against defendants Coleman and Wright, but allowed Mr. Moore's claims against defendants Wheldon, Dutkiewicz, and Redden challenging his sex offender score to proceed. Second Initial Review Order at 6.

The remaining defendants, Counselor Supervisor Wheldon, Psychiatric Social Worker Dutkeiwicz, and Director of Sex Offender Program Redden (together, "Defendants"), now move for summary judgment, arguing that Mr. Moore was not denied due process in connection with his classification, Defendants did not assign his sex offender classification score, Defendants are entitled to qualified immunity, and the claim is time-barred. Mot. Summ. J.

## II.    STANDARD OF REVIEW

The Court will grant a motion for summary judgment if the record shows no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986). The non-moving party may defeat the motion by producing sufficient specific facts to establish that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat

an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247-48.

The Court must view any inferences drawn from the facts in the light most favorable to the party opposing the summary judgment motion. *Dufort v. City of New York*, 874 F.3d 338, 343 (2d Cir. 2017). The Court will not draw an inference of a genuine dispute of material fact from conclusory allegations or denials, *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011), and will grant summary judgment only "if, under the governing law, there can be but one reasonable conclusion as to the verdict," *Anderson*, 477 U.S. at 250.

## III. DISCUSSION

Defendants move for summary judgment on four grounds: (1) Mr. Moore fails to present evidence to support a Fourteenth Amendment due process claim; (2) Defendants were not personally involved in assigning his sex offender classification score; (3) Defendants are protected by qualified immunity; and (4) Mr. Moore's claim is time-barred. Mot. Summ. J. The Court addresses the statute of limitations issue first.

### A. Statute of Limitations

Defendants argue that Mr. Moore's claim is time-barred. The Court disagrees.

The limitations period for filing a section 1983 action is three years. *See Lounsbury v. Jeffries*, 25 F.3d 131, 134 (2d Cir. 1994) (holding that § 52-577, which provides a three-year statute of limitations, "should have been applied to plaintiffs' claims under § 1983"). While the federal court looks to state law to determine the applicable limitations period, federal law controls when the cause of action accrues. *See Wallace v. Kato*, 549 U.S. 384, 388 (2007) ("[T]he accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law."). Under federal law, a cause of action accrues—and the statute of

9

limitations begins to run—"when the plaintiff can file suit and obtain relief." *Id.* (internal quotation marks and citation omitted). Thus, the Court must determine when the plaintiff possessed sufficient facts about the harm done to him that reasonable inquiry would reveal the cause of action. *See United States v. Kubrick*, 444 U.S. 111, 122-24 (1979) (holding that accrual of a claim need not "await awareness by the plaintiff that his injury was negligently inflicted" if the plaintiff, "armed with the facts about the harm done to him, can protect himself by seeking advice . . ."). The Court "should look to 'the time of the . . . act, not the point at which the consequences of the act become[] painful.'" *Coronado v. City of New York*, No. 11CV5188-LTS-HBP, 2014 WL 4746137, at *3 (S.D.N.Y. Sept. 24, 2014) (quoting *Eagleston v. Guido*, 41 F.3d 865, 871 (2d Cir. 1994)).

Defendants contend that Mr. Moore has been aware of his sex treatment need score since 1995, or, at the latest, since he signed a classification level review form on August 26, 2010. They submit no evidence, however, that Mr. Moore was assigned a sex treatment needs score of "3" in 1995 and, even if he had been, that he was told his score in 1995. Defendants present the signed form as evidence of Mr. Moore's knowledge of his score in 2010. *See* Defs.' Mem. Ex. 2, Attach. 5 at 116, ECF No. 43-4. In response, Mr. Moore denies that anyone advised him of his sex treatment need score in 1995 and contends that the signature on the classification level review form is a forgery. He states that the signature on the form is "J. Moore" and he always signs his name as "Joe Moore." Mr. Moore contends that he did not learn his sex treatment need score until his meeting with defendant Redden in 2015.

As a result, there is a genuine issue of fact as to whether Mr. Moore learned of his sex treatment need score before his meeting in 2015, an issue for the finder of fact, not for the Court on a summary judgment motion. *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996)

("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment."). Defendants' motion for summary judgment based on the statute of limitations having expired on Mr. Moore's claim therefore is denied.

### B. Procedural Due Process

Mr. Moore's due process claim, his only remaining claim, is based on an allegedly improper sex offender classification. This claim cannot survive summary judgment.

An improper classification of a sex treatment need score that has a stigmatizing effect can implicate a constitutional liberty interest. *See Vega v. Lantz*, 596 F.3d 77, 81-82 (2d Cir. 2010). In *Vega*, an inmate challenged his assignment of a sex treatment needs score of "3," *id.* at 80, the same score assigned to Mr. Moore. Vega argued that his classification violated his right to due process because he was classified as a sex offender, even though he had not been convicted of a sexual offense. *Id.* He argued that the misclassification "deprived him of a federal constitutional liberty interest in not being falsely stigmatized and a state-created liberty interest in not being labeled as a sex offender absent a criminal conviction." *Id.*

The Second Circuit considered Vega's claim a defamation claim. The court noted that, although defamation usually is considered a state-law claim, defamation by government officials may, under certain circumstances, rise to constitutional dimension. *Id.* at 81 (citing *Paul v. Davis*, 424 U.S. 693, 701-10 (1976)). To state a constitutional claim, the plaintiff must "demonstrate 'a stigmatizing statement plus a deprivation of a tangible interest.'" *Id.* (quoting *Algarin v. Town of Wallkill*, 421 F.3d 137, 138 (2d Cir. 2005)).

There are two components of a "stigma plus" claim. First, the plaintiff must establish the "stigma" by demonstrating "the utterance of a statement sufficiently derogatory to injure his or

her reputation that is capable of being proved false, and that he or she claims is false." *Id.* (quoting *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004)). Second, the plaintiff must demonstrate the "plus," "a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights." *Id.* The "plus" must be something "in addition to the stigmatizing statement." *Id.* Thus, "'deleterious effects [flowing] directly from a sullied reputation,' standing alone, do not constitute a 'plus' under the 'stigma plus' doctrine." *Sadallah*, 383 F.3d at 38 (quoting *Valmonte v. Bane*, 18 F.3d 992, 1001 (2d Cir. 1994)).

In *Vega*, the Second Court noted that wrongly classifying an inmate as a sex offender can be stigmatizing. 596 F.3d at 81-82 ("it continues to be the case that wrongly classifying an inmate as a sex offender may have a stigmatizing effect which implicates a constitutional liberty interest") (citing cases). The court concluded, however, that Vega failed to show that the classification was false because he did not establish that the statement used to support his classification was false. *Id.* at 82.

Defendants argue that the same analysis should apply here. They state that the conduct underlying Mr. Moore's conviction for risk of injury includes sexual intercourse with a 12-year-old girl, and have submitted copies of an investigator's report and the girl's sworn statement from the investigation of the July 9, 1993 incident. They also have submitted a copy of the judgment mittimus from state court indicating that Mr. Moore was convicted of only one charge, risk of injury, based on the July 9, 1993 incident. Mr. Moore denies the truth of the statements and states that the risk of injury charge was included with several narcotics charges when he entered his plea. Pl.'s Obj. to Mot. Summ. J., Pl. Affidavit ¶ 34, 37-39.[1]

---

[1] Although immaterial to the outcome of this case, his assertion is belied by the judgment mittimus. Def's Mem. Ex. 1.

To constitute stigma, the statement must be sufficiently derogatory, capable of being proven false, and claimed to be false by the plaintiff. The Second Circuit considers a sex treatment needs score of "3" to be sufficiently derogatory. Mr. Moore claims that the designation is false and that it is possible that the sexual contact allegations could be proven false. The classification also was based on Mr. Moore's sexual behavior while incarcerated. The classification manual submitted by the defendants provides that where a sex treatment need score is based on disciplinary reports, sexual in nature, that are received in prison, a hearing is required. *See* Defs.' Mem. Ex. 2, Attach. 1, ECF No. 43-4 at 46. It is not clear whether the disciplinary charges at issue here are predatory in nature and, thus, sufficient to independently support a score of "3" as the term "predatory" is not defined in the manual. There is no evidence in this record, however, that Mr. Moore received a classification hearing. Thus, for purposes of this ruling, the Court will assume that Mr. Moore can satisfy the stigma component of his due process claim.

Mr. Moore cannot, however, satisfy the second component of the "stigma-plus" claim. The "plus" must be something more than the consequence of the stigmatizing statement. *See Sadallah*, 383 F.3d at 38 (explaining that "stigma plus" claim requires "(1) the utterance of a statement sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false, and (2) a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights" (internal quotation marks and citations omitted)); *see also, e.g.*, *Greenwood v. New York Office of Mental Health*, 163 F.3d 119, 124 (2d Cir. 1998) (identifying the additional deprivation as termination of government employment or deprivation of a property interest such as clinical staffing privileges). For example, a claim that an inmate was labeled mentally ill and transferred from prison to a mental hospital would

be sufficient to support a stigma plus claim. *See Vitek v. Jones*, 445 U.S. 480, 493 (1980) ("[T]he stigmatizing consequences of a transfer to a mental hospital for involuntary psychiatric treatment, coupled with the subjection of the prisoner to mandatory behavior modification as a treatment for mental illness, constitute the kind of deprivations of liberty that requires procedural protections.").

The type of damage considered sufficient to constitute the "plus" cannot be abstract or speculative. *See Contiguous Towing, Inc. v. State*, 202 F. Supp. 3d 269, 273-74 (E.D.N.Y. 2016) (rejecting possible loss of business and business reputation harm as plus); *Hill v. Donoghue*, 815 F. Supp. 2d 583, 589 (E.D.N.Y. 2011) (rejecting harm to safety as a result of being labeled a "rat" as insufficient to constitute plus because plaintiff was not actually harmed by misinformation). To support his claim, Mr. Moore speculates that it might be more difficult for him to be granted parole or find a residential placement, and he is not eligible for training as a Certified Nursing Assistant. All of these possibilities are direct consequences of his sex treatment need score of "3." They are not separate from the classification. In addition, none of the identified possibilities are a legal right to which Mr. Moore is entitled.

Mr. Moore also states that he would be unable to obtain an overall risk level reduction to "2" when he becomes eligible for such reduction in 2027. A possibility that might occur ten years from now is too speculative to constitute the required deprivation. *See Filteau v. Prudenti*, 161 F. Supp. 3d 284, 293, 295 (S.D.N.Y. 2016) (dismissing stigma-plus claims that were "conclusory and speculative" and noting that "Filteau cannot manufacture a deprivation of liberty by speculating that a licensing body may one day find fault with his submission to it"). In *Filteau*, the court found that the "stigma-plus doctrine instead addresses the loss of a tangible interest that derives from a false statement or provision of false information by the

*government.*" *Id.* at 297. Indeed, as explained above, there are other factors that could affect a classification reduction and any reduction is discretionary. Even with a lower sex treatment needs score, a classification reduction is not assured. Thus, any possible impact on a risk level reduction that would not occur for ten years is too speculative to meet the requirement.

Finally, Mr. Moore argues that he was required to participate in a sex offender treatment program in 2001 as a prerequisite to being granted parole on a prior sentence. Mr. Moore, however, has no constitutional right to parole. *See Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7, (1979) ("There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence."). His decision to participate to seek eligibility for parole is not a state-imposed burden on his status. In the cases identified above, the burden is the complete denial of an interest or right. As Mr. Moore has not identified an appropriate "plus," his due process claim fails.

Mr, Moore focuses much of his memorandum on the procedure requirements for a classification hearing set forth in prison directives. Violation of these provisions alone, however, is insufficient to support a claim for denial of procedural due process. To state a claim for denial of due process in connection with mandatory language in prison directives, an inmate must show two things. First, he must show that "state statutes or regulations require, in language of an unmistakably mandatory character, that a prisoner not suffer a particular deprivation absent specified predicates." *Vega*, 596 F.3d at 83 (quoting *Welch v. Bartlett*, 196 F.3d 389, 392 (2d Cir. 1999) (internal quotation marks omitted)). Second, the liberty interest so created must subject the inmate to "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Id.* (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (internal quotation marks omitted)). "An inmate 'who experiences a deprivation arising under mandatory rules has

no actionable due process claim if other prisoners experience approximately the same deprivation in the ordinary administration of the prison with sufficient regularity that such deprivation is typical.'" *Id.* (quoting *Welch*, 196 F.3d at 392).

The record evidence also shows that Mr. Moore is housed in general population and that his sex treatment need score does not affect his ability to have a prison job, his privileges, his eligibility for Risk Reduction Earned Credit, or his eligibility for parole. And Mr. Moore has not submitted anything suggesting otherwise. *Contra* Compl. ¶¶ 9, 10; Pl. Aff. ¶ 66, 67, 96; *see* Def.'s 56(A)(1) statement ¶¶ 59, 60. As there is no genuine of issue of fact that his score has not subjected him to an atypical and significant hardship, Mr. Moore cannot state a claim for denial of procedural due process.

Finally, Mr. Moore raises the issue of the absence of classification documents in his master file. Although such documents would have been helpful for Defendants' untimeliness argument, they are not relevant to the main issue in this case. In his Amended Complaint, Mr. Moore challenges his assigned sex treatment need score. He does not assert a claim for failure to comply with prison directives regarding classification reviews in general. Indeed, he concedes that Defendants were not working for the Department of Correction when his initial sex treatment need score should have been issued and when many of the reviews would have taken place. Thus, there is no basis for permitting his claim to continue on this basis.

Because Mr. Moore's procedural due process claim fails as a matter of law, the Court need not and does not address Defendants' remaining arguments.

## IV. CONCLUSION

Defendants' motion for summary judgment, ECF No. 43, is **GRANTED**. The Clerk is directed to enter judgment and close this case.

**SO ORDERED.**

Dated this 31st day of January, 2018, at Bridgeport, Connecticut.

/s/
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE